**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 19-4031

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

   v.

ROBERT CHRISTOPHER CISSON,

        Defendant – Appellant.

Appeal from the United States District Court for the District of South Carolina, at Anderson. J. Michelle Childs, District Judge. (8:17-cr-00326-JMC-1)

Argued: January 25, 2022                    Decided: May 5, 2022

Before MOTZ, AGEE, and WYNN, Circuit Judges.

Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge Agee and Judge Wynn joined.

**ARGUED:** Erica Marie Soderdahl, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenville, South Carolina, for Appellant. Benjamin Neale Garner, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee. **ON BRIEF:** Benjamin T. Stepp, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenville, South Carolina, for Appellant. Sherri A. Lydon, United States Attorney, Columbia, South Carolina, Maxwell B. Cauthen, III, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenville, South Carolina, for Appellee

DIANA GRIBBON MOTZ, Circuit Judge:

Robert Christopher Cisson, a convicted felon, pled guilty to possessing a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1).  In his original appellate briefing, Cisson raised only one claim:  that the district court erred in applying an enhancement to his sentence under § 2K2.1(b)(6)(B) of the United States Sentencing Guidelines.  For the reasons that follow, we hold that any such error would be harmless.

Four days prior to oral argument before us, Cisson filed a Rule 28(j) letter[1] raising a new claim:  that the district court had also committed two errors contrary to *United States v. Rogers*, 961 F.3d 291 (4th Cir. 2020).  We requested and received supplemental briefs from the parties on whether we should reach those late-raised claims and if so, whether the district court committed *Rogers* errors.  We hold that we may reach the merits of these claims; but in doing so, we conclude that the court committed no *Rogers* errors.

Accordingly, we affirm the judgment of the district court.

## I.

On or around October 8, 2016, Cisson — a convicted felon — used counterfeit twenty-dollar bills to purchase a Ruger 9mm pistol and ammunition.  A federal grand jury subsequently indicted him on two counts:  (1) possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); and (2) passing counterfeit money,

---

[1] Under Federal Rule of Appellate Procedure 28(j), "[i]f pertinent and significant authorities come to a party's attention after the party's brief has been filed — or after oral argument but before decision — a party may promptly advise the circuit clerk by letter, with a copy to all other parties, setting forth the citations."  Fed. R. App. P. 28(j).

in violation of 18 U.S.C. § 472.  Cisson pled guilty to the first count; the Government dismissed the second.

The district court sentenced Cisson to 100 months' imprisonment and three years' supervised release.  Cisson appealed the sentence to this Court, and we remanded for resentencing on a basis not at issue here.  On remand, the probation officer prepared an amended presentence report.  In doing so, the probation officer applied a sentencing enhancement under § 2K2.1(b)(6)(B) of the Sentencing Guidelines, which advises district courts to increase a defendant's offense level by four if he "used or possessed any firearm or ammunition in connection with another felony offense."  Applying this enhancement, the probation officer calculated a total offense level of twenty-one and a criminal history category of V, resulting in a proposed Guidelines range of seventy to eighty-seven months' imprisonment.

The district court held a resentencing hearing, at which Cisson raised three objections to the probation officer's Guidelines calculation.  The court granted Cisson's first two objections, neither of which is at issue in this appeal.  As his third objection, Cisson argued that the district court should not apply the § 2K2.1(b)(6)(B) enhancement because he had not used the pistol "in connection with" the crime of passing counterfeit money.  The court overruled this objection and applied the enhancement.

Because the district court granted Cisson's first two objections, Cisson's criminal history category decreased from V to IV, which lowered his corresponding Guidelines range to fifty-seven to seventy-one months' imprisonment.  The court then sentenced Cisson to a within-Guidelines sentence of sixty-two months' imprisonment and three years'

3

supervised release. Cisson noted a timely appeal of the sentence, raising only one claim: that the district court erred in applying the § 2K2.1(b)(6)(B) enhancement.

On January 21, 2022 — four days prior to oral argument in this appeal — Cisson filed a Rule 28(j) letter raising an additional claim: that the district court committed two *Rogers* errors that independently require that we vacate his sentence and remand for resentencing. *See* Suppl. Authorities, *United States v. Cisson*, No. 19-4031 (4th Cir. Jan. 21, 2022) (ECF No. 54). According to Cisson, the district court committed *Rogers* errors by: (1) orally describing a condition specifying the district to which Cisson should report after his release in a way that differed from the description of that condition in the court's written judgment; and (2) orally announcing merely that Cisson would be subject to the "mandatory standard conditions" of supervised release and thereby failing to adequately announce the discretionary conditions that it later imposed in its written judgment. *Id.* In his Rule 28(j) letter, Cisson correctly noted that we decided *Rogers* and its progeny after he and the Government had completed briefing in his appeal.

Three days later (the day before oral argument), the Government filed a response letter. *See* Suppl. Authorities, *Cisson*, No. 19-4031 (4th Cir. Jan. 24, 2022) (ECF No. 55–1). In its letter, the Government argued not only that the district court had not committed *Rogers* errors but also that Cisson had waived any *Rogers* claims by raising them for the first time in a Rule 28(j) letter.[2] *See id.*

---

[2] The Government also argued that one of Cisson's *Rogers* claims was moot because Cisson had already been released to complete his sentence on home detention. *See* Suppl. Authorities at 2, *Cisson*, No. 19-4031 (ECF No. 55–1). But the Government has since (Continued)

4

After oral argument, we directed the parties to file supplemental briefs addressing: (1) whether we should reach Cisson's *Rogers* claims even though he raised them for the first time in a Rule 28(j) letter; and if so, (2) whether the district court in fact committed any *Rogers* errors. *See* Order, *Cisson*, No. 19-4031 (4th Cir. Jan. 27, 2022) (ECF No. 57).

## II.

We first turn to Cisson's original claim: that the district court erred in applying the § 2K2.1(b)(6)(B) sentencing enhancement. When deciding whether a district court erred in applying a sentencing enhancement, we review the court's legal conclusions de novo and factual findings for clear error. *United States v. Allen*, 446 F.3d 522, 527 (4th Cir. 2006). Here, the district court orally overruled Cisson's objection without making any factual findings. Our analysis is thus strictly legal.[3] Accordingly, we review the district court's application of the enhancement de novo.

## A.

Section 2K2.1(b)(6)(B) of the United States Sentencing Guidelines states that a district court may increase a defendant's offense level by four if the defendant "used or

---

conceded that the claim is not moot. That concession was wise — Cisson still faces three years of supervised release, and "a defendant serving a term of supervised release has a 'legally cognizable interest in the outcome' of a challenge to his sentence." *United States v. Ketter*, 908 F.3d 61, 66 (4th Cir. 2018) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).

[3] That distinguishes this case from *United States v. Jenkins*, 566 F.3d 160 (4th Cir. 2009), where we reviewed a district court's application of the same sentencing enhancement for clear error. In *Jenkins*, the district court specifically found that "the gun ha[d] the potential of facilitating the possession of crack cocaine," which we held was "a factual determination based on the specific circumstances of [that] case and, as such, [was] subject to a clearly erroneous standard of review." *Id.* at 163.

possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). Cisson does not dispute that he "possessed [a] firearm or ammunition." Nor does he dispute that he committed "another felony offense" by using counterfeit money. Cisson's sole challenge to the enhancement is that his possession of the firearm was not "in connection with" the counterfeit money offense.

"The Government bears the burden of proving that [a] defendant possessed a firearm 'in connection with another felony offense.'" *United States v. Blount*, 337 F.3d 404, 411 (4th Cir. 2003). The commentary to the Guidelines provides that a defendant possesses a firearm "in connection with" another felony offense if the firearm "*facilitated*, or had the *potential of facilitating*," the other offense. U.S.S.G. § 2K2.1 cmt. n.14(A) (emphasis added). We have explained that satisfying the "in connection with" requirement "is not especially burdensome." *United States v. Bolden*, 964 F.3d 283, 287 (4th Cir. 2020). But the Government cannot meet this burden "if the firearm was present due to mere 'accident or coincidence.'" *United States v. Jenkins*, 566 F.3d 160, 163 (4th Cir. 2009) (quoting *Blount*, 337 F.3d at 411). Rather, the firearm must have "'ha[d] some purpose or effect' with respect to the other offense." *Id.* at 162 (alteration in original) (quoting *Blount*, 337 F.3d at 411).

Often, the Government proves that a firearm had a "purpose or effect" with respect to another offense by showing that "the firearm 'was present for protection or to embolden'" the defendant. *Id.* (quoting *United States v. Lipford*, 203 F.3d 259, 266 (4th Cir. 2000)). To do so in the context of a burglary, for example, the Government may demonstrate "that the defendant actually used the stolen weapon to intimidate occupants of

6

the home, or that he prepared for this contingency by keeping the firearm close at hand." *Blount*, 337 F.3d at 411. To be sure, we have also stated in an unpublished opinion that "the phrase 'in connection with' [is] not narrowly construed to encompass *only* those circumstances where a firearm emboldens an individual or is used for protection" and that the phrase is instead "expansive." *United States v. Larrimore*, 593 F. App'x 168, 172 (4th Cir. 2014) (per curiam) (unpublished) (emphasis added). But we have also explicitly recognized that "[t]he purpose of this enhancement is to ensure that a defendant receives more severe punishment if . . . he commits a separate felony offense that is *rendered more dangerous* by the presence of a firearm." *Blount*, 337 F.3d at 406 (emphasis added).

One more point of law bears mentioning. Despite the strengths or weaknesses of the parties' arguments about applying the enhancement provision, we ultimately "need not decide" that question if we determine the error was harmless. *United States v. Kobito*, 994 F.3d 696, 704 (4th Cir. 2021). Rather, "we may 'assume that a sentencing error occurred and proceed to examine whether the error affected the sentence imposed.'" *Id.* (quoting *United States v. Hargrove*, 701 F.3d 156, 161 (4th Cir. 2012)). We have held that the erroneous application of a Guidelines sentencing enhancement "is harmless and does not warrant vacating the defendant's sentence if the record shows that (1) the district court would have reached the same result even if it had decided the [G]uidelines issue the other way, and (2) the sentence would be reasonable even if the [G]uidelines issue had been decided in the defendant's favor." *United States v. Mills*, 917 F.3d 324, 330 (4th Cir. 2019) (internal quotation marks omitted) (alterations in original) (quoting *United States v. Gomez-Jimenez*, 750 F.3d 370, 382 (4th Cir. 2014)).

7

With these principles in mind, we turn to their application to Cisson's sentence.

## B.

The Government offers two arguments to explain how Cisson used the pistol "in connection with" his use of counterfeit money. First, the Government argues that "the firearm — once in Cisson's hands — gave an additional measure of protection that he would complete his crime." Second, the Government argues that "without the gun[,] Cisson could not have passed the counterfeit money." Cisson rejects both arguments, insisting that he had already handed over the counterfeit money *before* he received the pistol and that the pistol thus could not have facilitated the commission of the counterfeit money offense. We ultimately need not reach the merits of any of these arguments. Even if the district court erred in applying the § 2K2.1(b)(6)(B) enhancement, any such error would be harmless.

As indicated above, we have held that an error is harmless if "(1) the district court would have reached the same result even if it had decided the [G]uidelines issue the other way, and (2) the sentence would be reasonable even if the [G]uidelines issue had been decided in the defendant's favor." *Mills*, 917 F.3d at 330 (internal quotation marks omitted) (alterations in original) (quoting *Gomez-Jimenez*, 750 F.3d at 382). First, under binding circuit precedent, we have held that we know a district court would have reached the same result when it tells us that it would have done so and explains why, *see id.* at 331, and here the district court did just that. And second, Cisson offers no argument as to why his sentence would be unreasonable if the enhancement provision issue had been decided in his favor, merely asserting at the end of his brief that his sentence was "unreasonable

8

based on the failure of the district court to adequately explain its sentence and its relation to the factors in § 3553(a)." That blanket assertion is insufficient to avoid waiving the argument. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017). And in any event, the district court did adequately explain the sentence and its relation to the § 3553(a) factors.

## III.

Our rejection of Cisson's challenge to his sentencing enhancement does not end this appeal; we must still address the late-raised *Rogers* claims. First, we must decide whether we may reach the *Rogers* claims even though Cisson raised them for the first time in a Rule 28(j) letter. Concluding that we can, we then consider what standard of review to apply to the *Rogers* claims and whether the district court in fact committed any *Rogers* errors. We address these questions in turn.

## A.

As an initial matter, we must decide whether we may reach Cisson's *Rogers* claims even though he raised them for the first time in a Rule 28(j) letter. Under the facts of this case, we hold that we may.

In this circuit, litigants ordinarily waive claims by raising them for the first time in a Rule 28(j) letter. *United States v. Jones*, 308 F.3d 425, 427 n.1 (4th Cir. 2002); *see also United States v. Ashford*, 718 F.3d 377, 381 (4th Cir. 2013). That is so because "considering an argument advanced for the first time in a Rule 28(j) filing is not only unfair to the appellee, it also creates the risk of an improvident or ill-advised opinion being issued on an unbriefed issue." *United States v. Leeson*, 453 F.3d 631, 638 n.4 (4th Cir. 2006).

9

However, we may "deviate from this rule in appropriate circumstances." *United States v. White*, 836 F.3d 437, 443 (4th Cir. 2016), *abrogated on other grounds by United States v. Stitt*, 139 S. Ct. 399 (2018).[4] One of those circumstances occurs "when an intervening decision of this Court or the Supreme Court affects precedent relevant to a case pending on direct appeal." *Id.* Under such a circumstance, an appellant "may timely raise a new argument, case theory, or claim based on that decision while his appeal is pending." *Id.* at 444. And of course, where we ask the parties to file supplemental briefs addressing the effect of that intervening decision (as we did here), such briefs obviate "the risk of an improvident or ill-advised opinion being issued on an unbriefed issue." *Leeson*, 453 F.3d at 638 n.4.

Cisson bases his new claims on three cases: *Rogers*, 961 F.3d 291; *United States v. Singletary*, 984 F.3d 341 (4th Cir. 2021); and *United States v. Jenkins*, No. 21-4003, 2022 WL 112069 (4th Cir. Jan. 12, 2022) (per curiam) (unpublished). In *Rogers*, we held that district courts must announce all discretionary conditions of supervised release at a defendant's sentencing hearing. 961 F.3d at 296. We subsequently emphasized in *Singletary* that the proper remedy for a *Rogers* error is to vacate the sentence and remand to the district court for resentencing. 984 F.3d at 346. And in *Jenkins*, we noted that where the description of a condition in an oral sentence did not match the description of that

---

[4] *White* considered whether a party waives an argument by raising it for the first time in supplemental briefing, but the same logic applies to raising an argument for the first time in a Rule 28(j) letter. *See Leeson*, 453 F.3d at 638 n.4 (holding that a defendant waived an argument by raising it for the first time in a Rule 28(j) letter in part because the case on which he based his new argument "was readily available at the time [he] filed his opening brief").

condition in the written judgment, that "error alone is reversible *Rogers* error." 2022 WL 112069, at *2.

We did not decide *Rogers*, *Singletary*, and *Jenkins* until after Cisson and the Government had already completed their original briefing in this appeal. In *White*, 836 F.3d at 443, we held that a defendant "can only 'abandon' an argument that was actually available to him," and so Cisson could not have abandoned his *Rogers* claims by failing to raise them in his original briefing.

Of course, the Government does not dispute that we did not decide *Rogers* and its progeny until after the parties completed their original briefing. The Government argues, however, that even before we decided *Rogers*, Cisson could have tried to break new ground by arguing exactly what the defendant in *Rogers* did: that district courts must announce discretionary conditions of supervised release at sentencing hearings. The Government reasons that, before we decided *Rogers*, no precedent directly *prevented* Cisson from making that argument, and so a *Rogers* claim must have always been available to him.

The Government is surely correct that, before we decided *Rogers*, Cisson could have tried to break new ground by raising the same argument as did the defendant in *Rogers*. But it would blink at reality to say that the argument was just as available to Cisson before we decided *Rogers* as it is now. Prior to *Rogers*, no precedent in this circuit clearly established that district courts must announce discretionary conditions of supervised release at sentencing hearings. *Rogers* established a bright-line rule mandating just that, and we have since quite often summarily vacated and remanded sentences based on district courts' failures to do so. *See, e.g.*, *United States v. Whiteside*, No. 19-4089, 2022 WL

11

898588, at *1 (4th Cir. Mar. 28, 2022) (per curiam) (unpublished); *United States v. Sims*, No. 20-4192, 2022 WL 777199, at *1 (4th Cir. Mar. 14, 2022) (per curiam) (unpublished); *United States v. King*, 852 F. App'x 752, 752–53 (4th Cir. 2021) (per curiam) (unpublished).

We cannot expect litigants, like fortune tellers peering into their crystal balls, to predict what we might hold in future cases. And so when the Supreme Court or this Court decides a case that affects precedent relevant to a case pending on direct appeal, we cannot hold that a litigant has waived an argument based on that new case merely because he previously failed to argue for the holding of that case himself. Contrary to the Government's assertion, that is so even if the new case does not "upend" existing precedent that had explicitly foreclosed such an argument. To hold otherwise would be to force litigants to continuously offer all possible arguments in a desperate attempt to avoid waiving a potential future argument. It would also unnecessarily require appellate briefs and opinions to be even longer and more labyrinthine than they are now.

B.

Having resolved that we may reach Cisson's *Rogers* claims, we must next determine what standard of review applies to them. Cisson argues that we should review the claims de novo. The Government, in contrast, argues that we should apply plain error review.

Cisson, of course, did not raise a *Rogers* objection in the district court. And when a defendant fails to object in the district court, we ordinarily review for plain error. *See, e.g.*, *United States v. McMiller*, 954 F.3d 670, 674 (4th Cir. 2020). But *Rogers* claims are different by nature. A defendant who raises a *Rogers* claim argues that his "written

12

judgment is inconsistent with his oral sentence." 961 F.3d at 295. A district court does not enter a defendant's written judgment until *after* it orally pronounces his sentence. So at the time of his sentencing hearing, a defendant would have *no way to know* that the court's oral pronouncement of his sentence might differ from the written judgment the court will later enter. As a result, we explained in *Rogers* that we "review the consistency of [the] oral sentence and the written judgment de novo." *Id.* at 296.

The Government nonetheless argues that, although we applied de novo review in *Rogers*, we should not similarly apply de novo review to Cisson's *Rogers* claims. The Government reasons that we applied de novo review in *Rogers* because in that case, "nothing occurred at sentencing that would have alerted Rogers to the possibility that his written judgment might include unmentioned conditions of supervised release." *Id.* at 295. Here, the Government maintains that something *did* occur at Cisson's sentencing to alert him to that possibility: his presentence report recommended that the district court impose discretionary conditions.

We agree with the Government that Cisson's presentence report put him on notice that his sentence might include discretionary conditions of supervised release. But presentence reports do not have the force of law. Unless and until a district court adopts a presentence report's recommendations, those recommendations remain just that: nonbinding *recommendations*. And in any event, even when a district court adopts the recommendations of a presentence report at a sentencing hearing, the report's contents have at that point only become part of the court's *oral* sentence. A court could still subsequently

13

enter a *written* judgment that differs from that oral sentence, including by adding other discretionary conditions that were not mentioned in the presentence report.

We thus reemphasize today what we held in *Rogers*: when a defendant claims that a district court committed a *Rogers* error, we "review the consistency of [the defendant's] oral sentence and the written judgment de novo." *Id.* at 296.[5]

C.

We now turn to the merits of Cisson's *Rogers* claims.

i.

Cisson bases his first *Rogers* claim not on a complete failure to announce a discretionary condition but rather on an alleged *inconsistency* between the descriptions of a condition in his oral sentence and in his written judgment. At his sentencing hearing, the district court told Cisson that "within 72 hours of being released from the Bureau of Prisons you'll report to Probation in the district *to which you are released*." (emphasis added). But the court's subsequently entered written judgment directed Cisson to "report to the probation office in the federal judicial district *where you are authorized to reside* within 72 hours of your release." (emphasis added). According to Cisson, this inconsistency

---

[5] The Government also points to one of our recent unpublished decisions, *United States v. Pollack*, as support for its argument that we should review Cisson's *Rogers* claims for plain error. No. 21-4221, 2022 WL 413951 (4th Cir. Feb. 10, 2022) (per curiam) (unpublished). But *Pollack* offers no such support. In *Pollack*, when reviewing the reasonableness of a sentence, we noted that the court had not committed a *Rogers* error and then held that the court did not "*otherwise* plainly err in imposing those discretionary conditions." *Id.* at *2 (emphasis added). Although we understand why the Government reads *Pollack* to support its position, in context it is clear that our reference did not pertain to a possible *Rogers* issue being plain error, but rather to *other* possible challenges to the imposition of the discretionary conditions as being reviewed under the plain error standard.

14

constitutes a *Rogers* error that requires vacating his sentence and remanding for resentencing.

In response, the Government contends that there is in fact no inconsistency. According to the Government, the district to which a defendant is released *is* the district in which he is authorized to reside. In other words, when the Government releases a defendant from prison, it releases the defendant "to" a district where it has determined he is allowed to live. Cisson fails to respond in any way to this proffered explanation.

The Government may well be correct that the district to which a defendant is released and the district in which he is authorized to reside are one and the same. There are, however, other possible interpretations, including that the district "to which a defendant is released" refers to the district that a defendant is *physically in when he first leaves prison* (i.e., the district in which his prison is located). But Cisson has waived any possible response to the Government's proffered explanation. For this reason, we must hold that there is no inconsistency between the descriptions of the condition in the oral sentence and written judgment, and thus no *Rogers* error.[6]

---

[6] Cisson relies heavily on one of our recent unpublished opinions, *Jenkins*, as support for his argument that this inconsistency constitutes a *Rogers* error. 2022 WL 112069. In *Jenkins*, as here, the court stated at the defendant's oral sentencing that "[w]ithin 72 hours of release, he shall report in person to the probation officer in the district *to which he's released.*" *Id.* at *1 (alteration in original) (emphasis added). And as here, the defendant's written judgment subsequently stated that he must "report to the probation office in the 'judicial district *where you are authorized to reside.*'" *Id.* (emphasis added). We vacated the sentence and remanded for resentencing on the basis of that inconsistency. *Id.* at *2. But in *Jenkins*, the Government failed to offer any explanation of that alleged inconsistency, let alone the one it provides here: that the district to which a defendant is released *is* the district in which he is authorized to reside. *See* Br. of Appellee at 9–18, *Jenkins*, No. 21-4003 (Sept. 24, 2021) (ECF No. 30).

15

ii.

Cisson's second *Rogers* claim fares no better. In his Rule 28(j) letter, Cisson initially argued that the district court failed to adequately announce his discretionary conditions of supervised release because the court merely stated that it would impose the "mandatory standard" conditions of supervised release. But that is not what the court actually said. In his supplemental briefing, Cisson notes that his counsel and Government counsel have since listened to the audio recording of his sentencing hearing and agree that the court actually stated that it would impose the "mandatory *and* standard conditions" of supervised release. (emphasis added). The transcript seems to have inadvertently omitted the word "and."

Despite acknowledging that the district court stated it would impose the "mandatory *and* standard conditions" of supervised release, Cisson nevertheless maintains that the court failed to adequately announce his discretionary conditions. But we made clear in *Rogers* that a court may satisfy its requirement to announce discretionary conditions "by incorporating . . . all Guidelines 'standard' conditions when it pronounces a supervised-release sentence." 961 F.3d at 299. That is exactly what the district court did here by stating that it would impose the "standard" conditions of supervised release. The District of South Carolina has no standing order listing its own "standard" conditions that differs from the Guidelines list of standard conditions found at U.S.S.G. § 5D1.3(c). *Cf. id.* at 295 (noting that the Western District of North Carolina has a standing order that governs supervised release and lists "standard" conditions). Thus, there is no other set of "standard"

16

conditions to which the court could have been referring other than the Guidelines "standard" conditions.[7]

IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

---

[7] Cisson also briefly argues that the district court failed to adequately explain *why* it imposed the discretionary conditions. But Cisson did not raise this argument in his original briefing or even in his Rule 28(j) letter, and he devotes only two sentences to the argument in his supplemental opening brief. He has thus waived the argument. *See Grayson O Co.*, 856 F.3d at 316.